**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION

| | |
|---|---|
| UNITED STATES | * * * |
| VS. | * * |
| SERGIO ZEPEDA CARLON | * * * * * |

NO: 4:08CR00013   SWW

**ORDER**

Before the Court is a motion for a judgment of acquittal or  a new trial by Defendant Sergio Zepeda Carlon ("Zepeda") (docket entry #57) and the government's response in opposition (docket entry #58).  The Court denied Zepeda's oral motions for judgment of acquittal during the trial, but has now determined, after careful consideration and for the reasons that follow, that Zepeda's motion for a judgment of acquittal will be granted, and his motion for a new trial will be denied.

**I.**

A grand jury indicted Zepeda,  Jose Luis Quinones Reyes ("Quinones"), and Maria Judith Zavalza Yanez ("Zavalza") for aiding and abetting the possession with intent to distribute cocaine.  Quinones pleaded guilty, the government dismissed the indictment against Zavalza, and the case against Zepeda proceeded to a jury trial.  On July 22, 2008, after a two-day trial, a jury returned a guilty verdict against Zepeda. The government's evidence consisted of the following.

1

On December 30, 2007, Zepeda was a passenger in the back seat of a BMW X5 sport utility vehicle ("SUV"), traveling eastbound on I-40 in Lonoke County, Arkansas. Quinones drove the SUV, and Zavalza, Quinones's wife, rode in the front passenger's seat. Arkansas State Police Officer Victor Coleman observed the SUV cross the center line and the fog line, and he stopped the vehicle. Quinones, who speaks Spanish and very little English, told Coleman he was traveling to North Carolina and the SUV belonged to an individual named Victor. Quinones produced a valid North Carolina driver's license.

Coleman then questioned Zepeda, who spoke some English and indicated that Quinones was his friend and they were traveling to North Carolina to celebrate the holidays. Coleman testified that he thought he recognized Zepeda as someone he had stopped before, and in response to questioning, Zepeda indicated that he had been stopped in Arkansas on a previous occasion. On cross-examination, Coleman acknowledge that he could find no written record showing that he had stopped Zepeda before December 30, 2007.

According to Coleman, Zepeda indicated to him, either by words or gesture, where he could find proof of insurance and registration for the SUV. Coleman found a contract showing that Victor Helmcke, with an address in Fontana, California, purchased the vehicle. He also found a speeding ticket issued to Victor Helmcke on I-40 in Texas in November 2007.

After Quinones gave Coleman consent to search the vehicle, Coleman walked his drug dog around the vehicle, and she alerted near the driver's side door. Coleman searched the interior of the vehicle and removed a plastic housing covering "the shifter" in the console area. According to Coleman's testimony, the plastic housing came off easily and underneath, he noticed the carpet had be cut "in a non-factory manner." Coleman suspected that a hidden

compartment had been installed under the floorboard for the purpose of concealing drugs.  He had the vehicle towed to the Lonoke County Detention Center, where 19 kilograms of cocaine were recovered from a hidden compartment under the floorboard.

Zepeda, Quinones, and Zavalza were transported to the Lonoke County Detention Center, where DEA agent Carlos Penagos, who speaks English and Spanish fluently, interviewed the detainees in order to obtain general information such as names, addresses, and dates of birth.  Zavalza and Quinones gave Penagos a Charlotte, North Carolina address.  Zavalza told Penagos that she worked at a McDonald's in Charlotte, and Quinones told him that he was a construction worker.  Zepeda told Penagos that he lived in San Jose, California and worked for a landscaping company.

Three days after the traffic stop, Zepeda requested to talk to Penagos.  After being advised of his *Miranda* rights, Zepeda told Penagos that he, Quinones and Zavalza left Fontana, California approximately one week before Coleman pulled them over on December 30, 2007.  Penagos testified: "He couldn't tell me a date.  He said they left probably about a week before they got pulled over."

Zepeda told Penagos that from Fontana, California, he and his companions traveled to Washington state, where they spent two days with Quinones's relatives, after which they continued their journey to North Carolina to celebrate the holidays with Quinones's family.  Zepeda stated that before they left California, the three spent a night at a residence owned by an individual he knew only as Victor.  Zepeda told Penagos that Victor owned the SUV and that Victor brought the vehicle to the defendants the night before they departed California.  Zepeda stated that he met Quinones a couple of months before they left for their cross-country trip, and

he was along as a favor to Quinones. Zepeda told Penagos he had no idea that the SUV contained cocaine.

The government introduced into evidence a receipt uncovered during the search of the SUV, which documented the purchase of goods on December 26, 2007 at 4:44 p.m. from a Marshall's Department Store in Ontario, California. Penagos testified that Ontario is 14 miles from Fontana, California.

The government offered evidence of the estimated driving times between (1) Fontana, California and Washington state--17 to 19 hours; (2) Fontana, California and Lonoke, Arkansas–26 hours; and (3) Washington state and Lonoke, Arkansas--over 36 hours.

Brian Townsend, a DEA chemist, provided expert testimony regarding cocaine trafficking. He testified that continuous interstates that go through several states, such as I-40 which extends from California to North Carolina, are frequently used by drug traffickers. Townsend testified that trafficking organizations use "mules" to transport drugs, and these individuals usually have some type of knowledge about the drugs they transport. He testified that 19 kilograms of cocaine has a $475,000 wholesale value and a $1.9 million retail value and that "drug traffickers wouldn't put that in the hands of someone who had no knowledge." On cross examination, however, Townsend agreed that when drugs are transported in a vehicle containing several individuals "only one person really needs to know" about the illegal cargo.

Finally, the jury heard testimony from Diego Santiago, who works for the North Carolina division of motor vehicles. Santiago testified about his participation in a November 2007 investigation that arose after Immigration and Custom Enforcement agents received information that a certain individual was interested in obtaining driver's licences to facilitate the

transportation of cocaine.  Santiago stated that he met the interested individual at a restaurant, and they planned an exchange of 1 kilo of cocaine for each driver's license he delivered.  The individual gave Santiago personal information about the individuals who would receive the licences, such as names, ages, social security numbers, addresses, and dates of birth.  After business hours, Santiago met four individuals, including Quinones, at a driver's license office.  Santiago took Quinones's photograph and issued him an official North Carolina driver's license in exchange for cocaine.

## II.

Under Federal Rule of Criminal Procedure 29, a district court shall enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction.  A court must view the evidence which was before the jury in the light most favorable to the government and must give the government the benefit of all reasonable inferences which may be logically drawn from the evidence, overturning the jury's verdict only if the evidence so viewed is such that a reasonable-minded jury must have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense.  *See United States v. Noibi* 780 F.2d 1419, 1421 (8th Cir. 1986)(citing *United States v. Netz*, 758 F.2d 1308, 1310 (8th Cir. 1985)).

The government asserts that Zepeda is "equally guilty" whether he possessed with intent to distribute cocaine as a principal or aided and abetted the commission of the crime.  The jury was instructed that Zepeda was charged with the crime of aiding and abetting the possession with intent to distribute cocaine.  The government argued its case under an aiding-and-abetting theory, the jury was instructed on the elements of aiding and abetting, and the jury found Zepeda

guilty of aiding and abetting, not possession with intent to distribute. Accordingly, the question before the Court is whether the evidence supports a conviction against Zepeda for aiding and abetting the possession with the intent to deliver cocaine.

As a threshold matter, the government had to prove that all of the elements of possession with the intent to distribute cocaine were committed by some person or persons. The Court finds that the jury heard evidence, including that a certain individual traded cocaine for a North Carolina driver's license issued to Quinones, sufficient to support a finding beyond a reasonable doubt that some person or persons committed the crime of possession with the intent to distribute cocaine.

Next, the government had to prove that Zepeda associated himself with the unlawful venture, participated in it as something he wished to bring about, and by his action sought to make the activity succeed. *See United States v. Clark,* 980 F.2d 1143, 1146 (8th Cir. 1992)(citing *United States v. Brim*, 630 F.2d 1307, 1311 (8th Cir.), *cert. denied*, 452 U.S. 966, 101 S.Ct. 3121(1980)).

The government asserts that this case turns on whether Zepeda had knowledge of the cocaine and argues that the evidence against Zepeda is strikingly similar to evidence presented in *United States v. Serrano-Lopez,* 366 F.3d 628 (8th Cir. 2004). In *Serrano-Lopez*, a jury convicted the defendant of possession with intent to distribute cocaine, and the Eighth Circuit affirmed the trial court's decision to deny a judgment of acquittal. The appellate court noted that the "fighting issue" was whether the defendant knew the drugs were in the car, and evidence that supported such knowledge included a large quantity of drugs, visible signs of tampering (tool marks) in the dash and glove box area where drugs were hidden, and the defendant's nervous

demeanor following the traffic stop.

In contrast to the evidence presented in *Serrano-Lopez*, signs of tampering were not visible from Zepeda's position in the back seat. Officer Coleman testified that he lifted a plastic housing in the console area and noticed evidence of tampering underneath. Additionally, there is no evidence that Zepeda appeared nervous after the traffic stop.

In *Serrano-Lopez*, the defendants gave inconsistent statements at the time of the traffic stop, and the Eighth Circuit held that the jury could have reasonably inferred that they concocted the stories because they knew drugs were hidden in the car, and they wanted to avoid detection by giving the officer a believable story. The government contends that Zepeda's "false exculpatory" post-arrest statement to Penagos likewise supports an inference that he knew there were drugs in the SUV and he was attempting to cover his guilt. Evidence regarding estimated driving times, according the government, made Zepeda's version of events improbable. Additionally, the government argues that Zepeda's statement that the defendants left Fontana, California a week before the traffic stop was proven to be false based on a receipt in the SUV showing a purchase made in Ontario, California on December 26.[1]

The jury could have disbelieved Zepeda's statement to Penagos regarding the details and purpose of the defendants' travels. Additionally, the jury could have inferred that Zepeda lied to Penagos because, under the circumstances of his arrest, he knew that he was caught up in a situation involving criminal activity. However, Zepeda's statement, without more, is insufficient to show that before his arrest, he knew about the cocaine hidden in the SUV or the illegal

---

[1] On cross examination, Penagos acknowledged that Zepeda could not give him an exact date, and Zepeda told him that the defendants "left probably about a week before they got pulled over."

purpose of the trip.

The evidence against Zepeda–that he was present in the back seat of the SUV; he knew where to find the proof of insurance and registration; and he traveled on I-40 at least once before--is not enough to sustain a conviction for aiding and abetting; there must be some additional evidence that he knew about the criminal enterprise and assisted in carrying it out.  A large quantity of drugs with a high street value hidden in a vehicle, along with other evidence, may support a finding that a passenger in the vehicle knew about the drugs.  For example, in *United States v. Ojeda*, 23 F.3d 1473 (8th Cir. 1994), the Eighth Circuit held that the government established the defendant's knowing possession of drugs hidden in a vehicle with evidence that the defendant's fingerprints were on several of the drug packages, and electronically locked trap doors where the drugs were hidden could be opened with pins inserted in the defendant's visor.  *See Ojeda*, 23 F.3d at 1474.   And in *United States v. Santana*, 524 F.3d 851 (8th Cir. 2008), the Eighth Circuit upheld a conviction for aiding and abetting possession of cocaine with intent to distribute based on evidence that the defendant (1) knew that the driver of the vehicle containing drugs was a drug dealer; (2) knew that the purpose of the trip was to collect drug money; (3) expected to be paid for making the trip; (4) previously accompanied the driver/drug dealer on two trips to the same destination, each time receiving payment; (5) lied to officers at the scene and in post-arrest statements; (6) appeared extremely nervous during the entire stop; and (7) had methamphetamine in his sock.  *Santana,* 524 F.3d at 855.

The Court finds that evidence against Zepeda does not compare to the evidence presented in *Ojeda* and *Santana*.  This case is closer to *United States v. Pace*, 922 F.2d 451 (8th Cir. 1990), where the Eighth Circuit found insufficient evidence that a driver knowingly possessed 200

pounds of cocaine concealed in his driving companion's luggage.  In *Pace*, the defendant was present in a vehicle containing a large quantity of cocaine, but there was no additional evidence that he knew about the cocaine or the criminal purpose of the trip.  Although the decision in *Pace* focused on knowing possession, which is not an element of aiding-and-abetting, without evidence that Zepeda had knowledge of the cocaine or the illegal mission of the trip, it is impossible to find that he associated himself with the illegal venture or shared the principal's criminal intent.

Even if Zepeda's knowledge were established, the government offered no evidence that he assisted in any aspect of the crime.  *See United States v. Irons*, 475 F.2d 40, 42 (8th Cir. 1973)(citations omitted)("It is well settled that absent some evidence of participation we cannot sustain a conviction."); *see also Baker v. United States*, 395 F.2d 368, 371 (8th Cir. 1968)(citations omitted)(stating that "knowledge that the crime was to be committed and presence at the scene are generally not sufficient").

In sum, the Court finds that viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, no construction of the evidence will support the jury's guilty verdict in this case.   Accordingly, the Court will enter a judgment of acquittal.

**III**.

Under Federal Rule of Criminal Procedure 29(d), if a trial court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed, and the court must specify the reasons for its determination.   "If the Court conditionally grants a motion

for a new trial, and an appellate court later reverses the judgment of acquittal, the trial court must proceed with the new trial unless the appellate court orders otherwise." Fed. R. Crim. P. 29(d)(3)(A).

Under Federal Rule of Criminal Procedure 33, upon the defendant's motion, a court may vacate any judgment and grant a new trial if the interest of justice so requires. Zepeda argues that several evidentiary rulings in this case were in error and require a new trial–specifically, denial of his pretrial motion to suppress evidence, permitting testimony that he was born in Mexico, permitting testimony regarding the procurement of Quinones's North Carolina driver's license, and permitting trooper Coleman to testify that he thought he recognized Zepeda from a previous traffic stop and that Zepeda indicated that he had bee stopped in Arkansas on a previous occasion. For the reasons stated on the record, the Court finds that the foregoing evidence was properly admitted, and its admission was neither prejudicial nor inconsistent with the interest of justice. The motion for a new trial will be denied.

### IV.

For the reasons stated, Defendant Zepeda's motion for judgment of acquittal (docket entry #57) is GRANTED. A separate judgment of acquittal will be entered together with this order. It is further ordered that Zepeda's motion for a new trial is DENIED.

IT IS SO ORDERED THIS 18TH DAY OF AUGUST, 2008.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE